

U.S. Department of Justice

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

June 11, 2018

BY E-MAIL: lori@llevinsonlaw.com

Lori H. Levinson, Esq.
500 Main Street, Suite 2
Great Barrington, MA 01230

  Re: <u>United States v. Jeffrey Pierce</u>
     Criminal No. 18-CR-300_____-MGM

Dear Counsel:

  The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Jeffrey Pierce ("Defendant"), agree as follows with respect to the above-referenced case:

  1. <u>Change of Plea</u>

  At the earliest practicable date, Defendant shall waive indictment and plead guilty to the Information attached to this Plea Agreement charging him with:

  a. Count One: Conspiracy To Commit Receipt Of Money Through Transactions Of A Credit Union With Intent To Defraud The Credit Union and False Statements To A Federal Credit Union (18 U.S.C. § 371).

  Defendant expressly and unequivocally admits that he committed the crime charged in Count One of the Information, did so knowingly and willfully, and is in fact guilty of that offense. Defendant also agrees to waive venue, to waive any applicable statute of limitations, and to waive any legal or procedural defects in the Information.

  The U.S. Attorney agrees not to charge Defendant pursuant to 18 U.S.C. §§ 1006 and 1014 based on the conduct underlying the crimes charged in this case that is known to the U.S. Attorney at this time.

  Defendant agrees to the accuracy of the attached statement of facts.

2. <u>Penalties</u>

Defendant faces the following maximum penalties on Count One, 18 U.S.C. § 371 (Conspiracy): incarceration for 5 years; supervised release for 3 years; a fine of $250,000, or twice the gross gain/loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.; and

Defendant also recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which Defendant is pleading guilty. Indeed, because Defendant is pleading guilty to 18 U.S.C. § 371, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including defense counsel and the District Court, can predict to a certainty the effect of this conviction on Defendant's immigration status. Defendant nevertheless affirms his decision to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is Defendant's automatic removal from the United States.

3. <u>Sentencing Guidelines</u>

The sentence to be imposed upon Defendant is within the discretion of the District Court ("Court"), subject to the statutory maximum penalties set forth above and the provisions of the Sentencing Reform Act, and the advisory United States Sentencing Guidelines ("USSG" or "Guidelines"). While the Court may impose a sentence up to and including the statutory maximum term of imprisonment and statutory maximum fine, it must consult and take into account the USSG and the other factors set forth in 18 U.S.C. § 3553(a) in imposing a sentence.

The parties agree that Defendant's total offense level under the USSG (prior to any adjustment for acceptance of responsibility) is calculated as follows:

a) in accordance with USSG § 2B1.1(a)(2), Defendant's base offense level is 6, because Defendant offense of conviction does not have a statutory maximum term of 20 years or more;

b) in accordance with USSG §2B1.1(b)(1)(J), Defendant's offense level is increased by 18, because Defendant's offense caused a loss between $3,500,000 and $9,500,000; and

- in accordance with USSG §2B1.1(b)(16)(A), Defendant's offense level is increased by 2, because Defendant derived more than $1,000,000 in gross receipts from a financial institution.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the USSG

or for a sentence outside the USSG under the factors set forth in 18 U.S.C. § 3553(a), except as specified below. Accordingly, neither the U.S. Attorney nor Defendant will seek a departure from, or a sentence outside, the USSG, except as set forth below.

Defendant reserves the right to contend that there is a basis for departure from, or a sentence outside, the otherwise applicable Guidelines sentencing range based on Defendant's medical, mental, and/or emotional condition. If Defendant contends that there is a basis for departure from, or a sentence outside, the otherwise applicable Guidelines sentencing range based on Defendant's medical, mental, and/or emotional condition, or otherwise intends to rely on any such condition at sentencing, Defendant will, forthwith upon request, execute all releases and other documentation necessary to permit the U.S. Attorney and his experts (including Bureau of Prisons medical personnel) to obtain access to Defendant's medical, psychiatric, and psychotherapeutic records and will also provide to the U.S. Attorney forthwith copies of any such records already in Defendant's possession. In addition, Defendant will authorize Defendant's care providers to discuss Defendant's condition with the U.S. Attorney and his agents (including Bureau of Prisons medical personnel), as well as experts retained by the U.S. Attorney. Defendant also agrees to submit to examinations and interviews with experts retained by and chosen by the U.S. Attorney (including Bureau of Prisons medical personnel).

The U.S. Attorney reserves the right to oppose Defendant's argument(s) for a departure from, or a sentence outside, the USSG under the factors set forth in 18 U.S.C. § 3553(a).

Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's adjusted offense level under USSG § 3E1.1.

The U.S. Attorney reserves the right not to recommend a reduction under USSG § 3E1.1 if, at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant:

a) Fails to admit a complete factual basis for the plea;

b) Fails to truthfully admit Defendant's conduct in the offense(s) of conviction;

c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

d) Fails to provide truthful information about Defendant's financial status;

e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG § 1B1.3;

f) Engages in acts that form a basis for finding that Defendant has obstructed or

3

impeded the administration of justice under USSG § 3C1.1;

g) Intentionally fails to appear in Court or violates any condition of release;

h) Commits a crime;

i) Transfers any asset protected under any provision of this Plea Agreement; or

j) Attempts to withdraw Defendant's guilty plea.

Defendant understands and acknowledges that Defendant may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that Defendant receive a reduction in offense level for acceptance of responsibility. Defendant also understands and acknowledges that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the U.S. Attorney may seek an upward adjustment pursuant to USSG § 3C1.1 if Defendant obstructs justice after the date of this Plea Agreement.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence before the Court:

a) incarceration within the Guidelines sentencing range as calculated by the parties in Paragraph 3;

b) a fine within the Guidelines sentencing range as calculated by the parties, unless the Court finds that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

c) 36 months of supervised release;

d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so);

e) restitution of $877,725 payable to Greylock Federal Credit Union ("GFCU") and $2,901,833 payable to Fidelity and Deposit Company of Maryland; and

f) forfeiture as set forth in Paragraph 9.

Defendant agrees to provide the U.S. Attorney expert reports, motions, memoranda of law and documentation of any kind on which Defendant intends to rely at sentencing not later than 21

4

days before sentencing. Any basis for sentencing as to which Defendant has not provided the U.S. Attorney all such items at least 21 days before sentencing shall be deemed waived.

Defendant agrees to recommend that the Court order restitution consistent with the U.S. Attorney's recommendation set forth above in paragraph 4(e).

Defendant agrees to repay restitution with monthly payments of $150 commencing no later than 30 days of his guilty plea, unless ordered otherwise by the Court.

The parties agree jointly to recommend the following special condition of any term of supervised release or probation:

During the period of supervised release or probation, Defendant must, within six months of sentencing or release from custody, whichever is later:

a) cooperate with the Examination and Collection Divisions of the IRS;

b) provide to the Examination Division all financial information necessary to determine Defendant's prior tax liabilities, if any;

c) provide to the Collection Division all financial information necessary to determine Defendant's ability to pay;

d) file accurate and complete tax returns for those years for which returns were not filed or for which inaccurate returns were filed; and

e) make a good faith effort to pay all delinquent and additional taxes, interest, and penalties.

5. <u>Protection of Assets for Payment of Restitution, Forfeiture and Fine</u>

Defendant agrees not to transfer, or authorize the transfer of, any asset that has been restrained by Order of the Court in this case or any asset, whether or not restrained, that Defendant has agreed to forfeit pursuant to this Plea Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which Defendant has an interest without prior express written consent of the U.S. Attorney, except for:

a) Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $10,000;

b) Ordinary living expenses necessary to house, clothe, transport, and feed Defendant and those to whom Defendant owes a legal duty of support, so long as such assets do not exceed $5,000 per month; and

5

c) Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Plea Agreement and continue until the fine, forfeiture, and restitution ordered by the Court at sentencing are satisfied in full.

Defendant further agrees to complete truthfully and accurately the enclosed sworn financial statement and to deliver that statement to the U.S. Attorney within 30 days of signing this Plea Agreement.

6. Waiver of Rights to Appeal and to Bring Future Challenge

   a) Defendant has conferred with his attorney and understands that he has the right to challenge both his conviction and his sentence (including any orders relating to the terms and conditions of supervised release, fines, forfeiture, and restitution) on direct appeal. Defendant also understands that, in some circumstances, Defendant may be able to argue in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3582(c), that Defendant's conviction should be set aside or Defendant's sentence (including any orders relating to the terms and conditions of supervised release, fines, forfeiture, and restitution) set aside or reduced.

   b) Defendant waives any right to challenge Defendant's conviction on direct appeal or in a future proceeding (collateral or otherwise).

   c) Defendant agrees not to file a direct appeal or challenge in a future proceeding (collateral or otherwise) any sentence of imprisonment of 46 months or less or any orders relating to the terms and conditions of supervised release, fines, forfeiture, and restitution. This provision is binding even if the Court's Guidelines analysis is different from that set forth in this Plea Agreement.

   d) The U.S. Attorney likewise agrees that, regardless of the analysis employed by the Court, the U.S. Attorney will not appeal any imprisonment sentence of 57 months or more.

   e) Regardless of the previous sub-paragraphs, Defendant reserves the right to claim that: (i) Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington*; or (ii) the prosecutor in this case engaged in misconduct that entitles Defendant to relief from Defendant's conviction or sentence.

7. Other Post-Sentence Events

a) If, despite the waiver provision of sub-paragraph 6(c), Defendant appeals or challenges in a future proceeding (collateral or otherwise) Defendant's sentence, the U.S. Attorney reserves the right to argue the correctness of the sentence imposed by the Court (in addition to arguing that any appeal or future challenge (collateral or otherwise) is waived as a result of the waiver in sub-paragraph 6(c)).

b) If, despite the waiver provision of sub-paragraph 6(c), Defendant seeks re-sentencing, Defendant agrees not to seek to be re-sentenced with the benefit of any change to the Criminal History Category that the Court calculated at the time of Defendant's original sentencing, except to the extent that Defendant has been found actually factually innocent of a prior crime.

c) In the event of a re-sentencing following an appeal from or future challenge (collateral or otherwise) to Defendant's sentence, the U.S. Attorney reserves the right to seek a departure from and a sentence outside the USSG if, and to the extent, necessary to reinstate the sentence the U.S. Attorney advocated at Defendant's initial sentencing pursuant to this Plea Agreement.

8. Court Not Bound by Plea Agreement

The parties' sentencing recommendations and their respective calculations under the USSG are not binding upon the U.S. Probation Office or the Court. Within the maximum sentence Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the Court. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed, or because the U.S. Probation Office or the Court declines to follow the parties' USSG calculations or recommendations. Should the Court decline to follow the U.S. Attorney's USSG calculations or recommendations, the U.S. Attorney reserves the right to defend the Court's calculations and sentence in any direct appeal or future challenge (collateral or otherwise).

9. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. $3,821,616 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

7

Defendant admits that $3,821,616 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant obtained, directly or indirectly, as a result of the offense (*i.e.*, the amount of funds provided without proper authority to Defendant by GFCU) and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

10. <u>Information for Presentence Report</u>

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

11. <u>Civil Liability</u>

By entering into this Plea Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this

8

Plea Agreement. Defendant agrees to cooperate with employees of GFCU in making an assessment of his civil liabilities to GFCU. Defendant specifically authorizes release by the Internal Revenue Service to GFCU and its representatives of information for purposes of making that assessment.

12. <u>Rejection of Plea by Court</u>

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on Defendant's motion, this Plea Agreement shall be null and void at the option of the U.S. Attorney.

13. <u>Breach of Plea Agreement</u>

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Plea Agreement, has violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's execution of this Plea Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Plea Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, regardless whether he elects to be released from his commitments under this Plea Agreement. Further, the U.S. Attorney may pursue any and all charges that have been, or are to be, dismissed pursuant to this Plea Agreement. Defendant recognizes that his breach of any obligation under this Plea Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea, but will give the U.S. Attorney the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements made by Defendant and any information, materials, documents or objects provided by Defendant to the government, without any limitation, regardless of any prior agreements or understandings, written or oral, to the contrary. In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

14. <u>Who is Bound by Plea Agreement</u>

This Plea Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

15. <u>Modifications to Plea Agreement</u>

This Plea Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Steven H. Breslow.

Very truly yours,

ANDREW E. LELLING
United States Attorney

By: _____
KEVIN O'REGAN
Chief, Springfield Branch Office


_____
STEVEN H. BRESLOW
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that (a) it accurately sets forth my plea agreement with the United States Attorney's Office for the District of Massachusetts; (b) there are no unwritten agreements between me and the United States Attorney's Office; and (c) no official of the United States has made any unwritten promises or representations to me, in connection with my change of plea. In addition, I have received no prior offers to resolve this case. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses, and the Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty, and I believe this Plea Agreement is in my best interest.

_____
Jeffrey Pierce
Defendant

Date: 6/27/18

I certify that Jeffrey Pierce has read this Plea Agreement and that we have discussed its meaning. I believe he understands the Plea Agreement and is entering into the Plea Agreement freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Lori H. Levinson, Esq.
Attorney for Defendant

Date: 6/27/18

**United States v. Jeffrey Pierce**
**Criminal No. 18-CR-300_____-MGM**
**Attachment To Plea Agreement: Statement of Facts**

*The parties agree that, if this matter had proceeded to trial, the United States would have proven the facts set forth below beyond a reasonable doubt. The parties further agree that the following facts do not encompass all of the facts that would have been proven if this matter proceeded to trial. The parties also agree that the following facts satisfy the necessary elements of the crimes to which Defendant is pleading guilty.*

a. <u>Jeffrey Pierce, Michael Dicenzo, and the GFCU Loans</u>

Jeffrey Pierce is a businessman who owned and operated the following construction and real estate development companies:

    i. G & P Builders, Inc. ("GPB");
    ii. Oakbrook, Inc. ("Oakbrook");
    iii. Modular Home Connection, Inc. ("MHC");
    iv. Gale Development, LLC ("Gale"); and
    v. G & P Excavation, Inc. ("GPE").

Pierce and his companies had loan accounts at Greylock Federal Credit Union ("GFCU"), a federal credit union headquartered in Pittsfield. GFCU's accounts were insured by the National Credit Union Administration Board. GFCU's vice president of business banking, Michael Dicenzo ("Dicenzo"), supervised the loan accounts for Pierce and his companies.

Between March 1, 2005 and September 5, 2008, Dicenzo authorized approximately $4 million in various loans and loan modifications to Pierce and his companies in knowing and intentional violation of GFCU's loan approval, loan aggregation, loan modification, and loan documentation policies. By circumventing GFCU's policies, Dicenzo caused GFCU to provide Pierce and his companies with funds far in excess of what Pierce and his companies could reasonably receive or repay.

On the following dates, Dicenzo authorized the following loans to Pierce or his entities:

| Date | Loan No. | Recipient | Loan | Amount | Modification |
|---|---|---|---|---|---|
| 03-21-05 | 1032 | Pierce | 5-year Adjustable Rate Mortgage | $154,200 | -- |
| 11-29-05 | 1070 | Pierce | Home Improvement | $9,152 | -- |
| 03-23-06 | 1640 | GPB | Single Advanced Adjustable Rate | $48,000 | $220,000 |
| 06-30-06 | 1601 | GPB | Term Fixed | $33,650 | -- |
| 08-14-06 | 1600 | Oakbrook | Passenger Auto | $47,666 | -- |
| 09-07-06 09-19-08 11-25-08 | 1661 | Oakbrook | Adjustable Rate Mortgage | $158,400 | -- $116,600 $ 85,000 |

12

| Date | Loan No. | Recipient | Loan | Amount | Modification |
|------|----------|-----------|------|--------|--------------|
| 10-04-06 | 131621 | Oakbrook | Letter of Credit | $200,000 | $0 |
| 04-30-07 | | | | | $ 50,000 |
| 07-17-07 | | | | | $ 50,000 |
| 11-13-07 | | | | | $100,000 |
| 05-29-08 | | | | | $ 75,000 |
| 10-31-06 | 471621 | GPB | Letter of Credit | $200,000 | -- |
| 02-20-07 | 4687 | MHC | Adjustable Rate Mortgage | $110,000 | -- |
| 12-10-07 | | | | | $100,000 |
| 01-07-08 | | | | | $ 90,000 |
| 02-20-07 | 2385 | Oakbrook | Adjustable Rate Mortgage | $240,000 | -- |
| 02-23-07 | 6676 | MHC | Letter of Credit | $175,000 | -- |
| 07-17-07 | | | | | $75,000 |
| 09-12-07 | | | | | $50,000 |
| 01-04-09 | | | | | $75,000 |
| 04-09-07 | 0387 | Gale | Fixed Rate Mortgage | $130,000 | -- |
| 09-20-07 | | | | | $278,000 |
| 03-21-08 | | | | | $ 92,000 |
| 04-11-07 | 2536 | GPE | Letter of Credit | $100,000 | -- |
| 07-17-07 | | | | | $100,000 |
| 09-17-07 | | | | | $ 75,000 |
| 06-27-08 | | | | | $ 50,000 |
| 05-07-07 | 9945 | GPE | Term Fixed | $232,500 | -- |
| 04-29-08 | | | | | $92,500 |
| 06-01-09 | | | | | $50,000 |
| 05-30-07 | 1427 | Oakbrook | Single Advanced Fixed | $75,000 | -- |
| 03-14-08 | | | | | $50,000 |
| 01-27-09 | | | | | $50,000 |
| 03-16-09 | | | | | $62,000 |
| 05-30-07 | 3230 | Gale | Letter of Credit | $300,000 | -- |
| 04-08-09 | | | | | $50,000 |
| 09-07-07 | 7697 | MHC | Term Fixed | $31,800 | -- |
| 11-05-07 | 7036 | GPE | Passenger Auto | $44,300 | -- |
| 03-27-08 | 1523 | MHC | Used Auto | $30,900 | -- |
| 09-05-08 | 7862 | Pierce | Recreational | $17,422 | -- |

  b. <u>The Conspiracy</u>

In exchange for improperly authorizing these loans, Pierce agreed to provide and did provide Dicenzo various money, profit, property, and benefits that derived from the GFCU loan funds. After GFCU auditors discovered the loan improprieties, Dicenzo and Pierce agreed to provide, and did provide, a false cover story for the CAD payments.

Pierce provided Dicenzo with the following: $134,773 in check payments from Pierce's companies that derived from GFCU loan funds and that were paid to a front company created by Dicenzo called CAD Home Designs ("CAD"); the free use of a home constructed by one of

13

Pierce's companies with a GFCU loan; and the free use of a BMW automobile purchased by one of Pierce's companies with a GFCU loan.

      c.    Representative Payments By Pierce In Furtherance Of The Conspiracy

The payments from Pierce's entities deposited in the CAD account included the following representative checks written by Pierce:

      i.    On or about May 30, 2007, at Dicenzo's request, Pierce wrote the following two $7,500 checks to CAD:

      (1)    Check No. 1006 from GPE's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about May 31, 2007. This payment related to GPE's Loan No. 9945 in the amount of $232,500, which GFCU issued on May 7, 2007.

      (2)    Check No. 295 from Oakbrook's business checking account numbered x-131 at GFCU. Dicenzo deposited this check into the CAD account on or about June 1, 2007. This payment related to Oakbrook's Loan No. 1427 in the amount of $75,000, which GFCU issued on May 30, 2007.

      ii.    On or about September 17, 2007, at Dicenzo's request, Pierce wrote the following two $15,000 checks to CAD:

      (1)    Check No. 1014 from GPE's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about September 19, 2007. This payment related to the modification of GPE's Letter of Credit No. 2356 in the amount of $75,000, which GFCU issued on September 17, 2007.

      (2)    Check No. 1033 from MHC's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about September 19, 2007. This payment related to the modification of MHC's Letter of Credit No. 6676 in the amount of $50,000, which GFCU issued on September 12, 2007.

      d.    Pierce's False Statement To GFCU

In or about March 2010, Pierce met with an officer of GFCU and a representative of GFCU's forensic accounting firm to discuss the loans authorized by Dicenzo and still owed by Pierce and his companies. At Dicenzo's direction and for the purpose of influencing the action of GFCU upon the loans, Pierce falsely stated that the monies paid by his companies to CAD were

14

payments for design work that Dicenzo's wife provided to Pierce's construction projects, when in fact as Pierce knew, Dicenzo's wife did not provide any work to Pierce of his companies.

      e.    The Loss

GFCU recovered only approximately $545,000 in collateral from Pierce. GFCU's insurer, Fidelity and Deposit Company of Maryland, reimbursed GFCU $2,901,833, and GFCU lost an additional $877,725.

-SHB-