# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | CR-18-30024-MGM |
| **JEFFREY PIERCE,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMO

The United States of America, by and through Andrew E. Lelling, United States Attorney for the District of Massachusetts, Steven H. Breslow (the "Government"), hereby files its Opposition to the Emergency Motion For Modification of Sentence Under 18 U.S.C. § 3582(c)(1)(A) (the "Motion") (D.58) of defendant Jeffrey Pierce (the "defendant").

The Government appreciates the gravity of the COVID-19 pandemic. While undoubtedly serious, however, it does not warrant revisiting the defendant's sentence. The defendant's argument also fails because he has failed to exhaust his administrative remedies. Even if he had, the defendant's systemic concerns, accentuated only by his claimed diabetes, sleep apnea, high blood pressure, and high cholesterol, do not qualify as "extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A)(i).

For the reasons discussed below, the Court should deny the Motion.

1. <u>Procedural and Factual Background</u>

On June 27, 2018, pursuant to a written Plea Agreement, the defendant pleaded guilty to an Information charging one count of Conspiracy To Commit Receipt Of Money Through Transactions

Of A Credit Union and To Commit False Statements To A Federal Credit Union (18 U.S.C. § 371). (D.2-6). On August 9, 2019, this Court sentenced the defendant to 20 months of incarceration to be followed by two years of supervised release. (D.47, 50).

On May 1, 2020, the defendant filed the Motion, seeking release from FMC Devens based upon the ongoing COVID-19 pandemic, the conditions at FMC, and his health problems. The defendant's release date is March 22, 2021.[1]

As of May 14, 2020, according to the Bureau of Prisons, ("BOP") FCI Devens has the following: 10 COVID-positive inmates, 2 COVID-positive staff, 1 COVID inmate death, 0 staff deaths, 1 inmate recovered, and 0 staff recovered.[2]

2. The Response Of The Department Of Justice To The Pandemic

The significant public health risks associated with the worldwide COVID-19 outbreak are beyond dispute and require no further explanation here. *See* Attorney General Memorandum for Director of Bureau of Prisons (Mar. 26, 2020) (the "March AG Memo.").[3] To assess which inmates should be granted home confinement, the Attorney General directed BOP to consider, among other things: the statutory requirements for home confinement; the age and vulnerability of the inmate to COVID-19; the security level of the facility currently holding the inmate; the inmate's conduct in prison; and whether the inmate has a demonstrated re-entry plan that includes verification that the potential conditions of home confinement upon release would present a lower risk of contracting COVID-19 than the inmate would face in his BOP facility. *Id*.

---

[1] *See* https://www.bop.gov/inmateloc/.
[2] https://www.bop.gov/coronavirus/index.jsp.
[3] www.justice.gov/coronavirus.

On April 3, 2020, the Attorney General sent another memorandum to the Director of BOP. See Attorney General Memorandum for Director of Bureau of Prisons (Apr. 3, 2020), available at www.justice.gov/coronavirus (the "April AG Memo."). In this memorandum, the Attorney General noted that certain federal correctional facilities were experiencing significant COVID-19 outbreaks. *Id.* The Attorney General then expanded his initial directive by ordering BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with inmates incarcerated at . . . facilities where [BOP] determines that COVID-19 is materially affecting operations." *Id.*

BOP has sought to implement the Attorney General's directive as quickly and thoroughly as possible by, among other things, "immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine which inmates are suitable for home confinement." *See* Bureau of Prisons, "COVID-19 Home Confinement Information" (Apr. 16, 2020).[4] To this end, BOP has placed over 1,000 federal inmates on home confinement in light of the COVID-19 pandemic. *Id.* For the inmates remaining in custody, BOP has taken extraordinary steps to increase their protection against the disease. *Id.* Unsurprisingly, as it navigates this crisis, BOP has prioritized review of inmates incarcerated at facilities where there are known cases of COVID-19 and of inmates who are otherwise particularly vulnerable to infection because of other specific risk factors.

3. The Response Of The Bureau Of Prisons To The Pandemic

The Bureau of Prisons has adopted the following procedural response to the pandemic:[5]

---

[4] www.bop.gov/coronavirus.
[5] https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response

In February 2020, the BOP's Public Health Service (PHS) staff were placed in operational dress uniforms to be ready to respond to COVID-19 incidents by the Assistant Secretary for Health (OASH) of the Department of Health and Human Services (HHS). As a result, the BOP began planning for its COVID-19 response and instituted a comprehensive management approach for oversight of the situation. Oversight includes all BOP Regional Offices, all BOP Central Office Divisions (which oversee program level functions), and the National Institute of Corrections (NIC) that coordinates with state and local prisons and jails. The BOP implemented its approved Pandemic Influenza Plan.

The BOP's planning is structured using the Incident Command System (ICS) framework. The BOP is utilizing the guidance and directives from the World Health Organization (WHO), the Centers for Disease Control (CDC), the Office of Personnel Management (OPM), DOJ and the Office of the Vice President. The BOP's Incident Action Plan includes but is not limited to the COOP plans, supplies, inmate movement, visitation, staff training, and official staff travel. The ICS Command Center conducts daily briefings and provides updates to senior management. BOP institutions, as a matter of policy and procedure, have pandemic plans for preparedness in the event of any infectious disease outbreak.

Guidance memos have been issued from Central Office, including guidance sent by the BOP Medical Director to all field clinical personnel on January 31, 2020 and on February 29, 2020. The guidance described screening best practices, provided inmate and staff screening tools, and CDC best practices/flyers as to preventing the spread of the disease. The screening tool for staff has been published on the BOP's internal and public websites. On March 6, 2020, additional guidance was sent to BOP field sites to assess and review the BOP's Personal Protective Equipment (PPE) inventory. A national acquisition plan is being executed to obtain bulk purchases, stockpile supplies and coordinate distribution. The inventory of infectious disease PPE supplies has already been completed at all BOP locations and the use of alternative supply chain options is being explored. Guidance from the BOP's Health Services Division and the Human Resource Management Division was issued to all BOP staff on March 9, 2020 regarding COVID-related screening for staff and how leave should be assigned (BOP leave protocols follow OPM guidance).

In addition, the BOP has implemented the following modified operations to mitigate the spread of COVID-19 in its facilities:[6]

> SOCIAL VISITS: Social visits are suspended. Inmate telephone system minutes will be increased to 500 minutes per calendar month Bureau-wide.
>
> INMATE MOVEMENT (Updated): As we previously described generally, inmate internal movement is suspended with limited exceptions. This suspension, however, does not mean the BOP has ceased all inmate movements because the federal judicial system as well as state courts continue to process criminal cases.
>
> These movement exceptions may include, but are not limited to, transfers related to forensic studies, writs, Interstate Agreements on Detainers (IAD), medical or mental health reasons (including local medical trips), and RRC placements. To be clear, the BOP may need to move inmates to better manage the detention bedspace as well as assure that administrative facilities do not become overcrowded beyond available resources.
>
> All inmates are being authorized for movements from all facilities under the following conditions:
> - Inmates must have been in BOP custody for greater than 14 days;
> - Perform an exit screening for COVID-19 symptoms (fever, cough, shortness of breath and temperature).
> - If the inmate has no symptoms and a temperature less than 100.4 degrees F, the inmate will be transferred;
> - If the inmate has COVID-19 symptoms, or temperature greater than 100.4 degrees F, they will not be transferred and will instead be immediately placed in isolation.
> - Regional Directors will notify the BOP Emergency Operations Center prior to movement in order to track and monitor movement.
>
> The BOP emphasizes that all inmates regardless of where they are being housed are screened for COVID-19 prior to movement. Both the BOP and USMS are using screening protocols for both inmates and staff.

---

[6] https://www.bop.gov/coronavirus/covid19_status.jsp

LEGAL VISITS: Legal visits will be suspended for 30 days, at which time the suspension will be re-evaluated. Case-by-case approval at the local level and confidential legal calls will be allowed in order to ensure access to counsel. If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff. Access to legal counsel remains a paramount requirement and will be accommodated to the maximum extent practicable. Although legal visits are generally suspended for 30-days, case-by-case accommodation will be made at the local level. If approved for an in-person visit, the attorney will need to undergo advanced health screening, to include a temperature check.

OFFICIAL STAFF TRAVEL: Official staff travel, with the exception of relocation travel, is suspended.

TRAINING: All staff training is suspended (to include conferences and meetings), with the exception of basic training for new staff.

CONTRACTORS: Contractors performing essential services or necessary maintenance on essential systems will undergo advanced health screening, to include a temperature check. All other contractor access is suspended. Contractors who require access will be screened using the same procedures as staff prior to entry.

Essential services include, for example, medical services, mental health services, religious services and critical infrastructure repairs.

A copy of the Visitor/Volunteer/Contractor COVID-19 Screening Tool will be required for all visitors, volunteers, and contractors. A copy will be provided by staff members at the lobby for all institutions.

VOLUNTEERS: Volunteer visits are suspended, unless approved by the Deputy Director of the BOP. Alternate means of communication will be considered for inmates who request to speak with a religious advisor. Volunteers who are approved for access will be screened using the same procedures as staff prior to entry.

A copy of the Visitor/Volunteer/Contractor COVID-19 Screening Tool will be required for all visitors, volunteers, and contractors. A copy will be provided by staff members at the lobby for all institutions.

SCREENING OF STAFF: Enhanced health screening of staff will be implemented in areas with "sustained community transmission" and at medical referral centers. Sustained community transmission is determined by the CDC and will be indicated on the map on this resource page where state community transmission indicates "Yes". Such screening includes self-reporting and temperature checks for the next 30 days, at which time the process will be reevaluated.

SCREENING OF INMATES: The BOP will continue to screen inmates for COVID-19 following previously-indicated practices:
•All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms.
•Asymptomatic inmates with exposure risk factors are quarantined.
•Symptomatic inmates with exposure risk factors will be isolated and tested for COVID-19 per local health authority protocols.

TOURS: Tours are suspended. Any exceptions must be approved by the Deputy Director. If approved, participants will be screened using the same procedures as staff prior to entry.

MODIFIED OPERATIONS: BOP is implementing modified operations to maximize social distancing in our facilities, as much as practicable. Such actions will include consideration of staggered meal times and staggered recreation times, for example, in order to limit congregate gatherings.

PRIVATE DETENTION CONTRACTORS: This COVID-19 guidance is being shared with private prisons and RRCs for dissemination to staff and inmates in these facilities, so that similar protocols can be implemented.

4. The Response Of Devens FMC To The COVID-19 Epidemic

FMC Devens is an institution designed to house approximately 1,200 inmates at the main facility (the "FMC") and approximately 128 inmates at the adjacent Federal Prison Camp (the "FPC"). *See* Declaration of Amber Bourke, attached to D.32, *United States v. Kellem*, 19-CR-10277-WGY ("Bourke Decl.") at ¶ 3. The main FMC facility and the FPC are separate facilities,

and the inmate populations do not interact. *Id.*

FMC Devens has implemented BOP's national action plan, and has also taken numerous other measures to fight the introduction and spread of COVID-19 within its facilities including providing inmate and staff education; conducting inmate and staff screening; putting into place testing, quarantine, and isolation procedures in accordance with BOP policy and CDC guidelines; ordering enhanced cleaning and medical supplies; and taking a number of other preventative measures. See Declaration of Megan Shaw, M.D. attached to D.32, *United States v. Kellem*, 19-CR-10277-WGY ("Shaw Decl."), at ¶ 19. From the outset of the COVID-19 pandemic, FMC Devens officials have provided regular updates to inmates and staff regarding the virus and BOP's response, and have educated inmates and staff regarding measures that they should take to stay healthy. *Id.* ¶ 20.

The measures that FMC Devens has taken to insure the health and safety of its staff and inmates includes, but is not limited to, the following:

    a.    <u>Inmate Screening and Social Distancing</u>

FMC Devens has implemented extensive measures to screen inmates for COVID-19, for both newly arriving inmates and its resident inmate population. All new inmates are screened for any fever or symptoms. *Id.* ¶ 26. They are then placed in an automatic 14-day quarantine before being released to their housing units. *Id.* If the inmate exhibits any symptoms of coronavirus, the inmate is tested, treated and placed in the Isolation Unit. *Id.* Resident inmates who are admitted to an outside hospital and/or emergency room are also placed on a 14-day quarantine upon their return to FMC Devens. *Id.* FMC Devens is also screening every inmate, every day, for fever and/or symptoms of COVID-19. *Id.* Any inmate with signs and/or symptoms of

COVID-19 is removed from the housing unit and isolated away from all other inmates. *Id.* In addition, the inmate is immediately tested for COVID-19. *Id.*

All inmate activities have been separated by housing unit and floor in order to "shelter in place" with the fewest number of fellow inmates. *Id.* ¶ 31. Every housing unit at FMC Devens has been sheltering in place, and any inmate needing to be reassigned to another housing unit has been quarantined off of that unit for 14 days prior to reassignment. *Id.* Each floor of each unit has designated times for meals, recreation, laundry, commissary, education, the law library, book cart distribution, and job assignments. *Id.* The staff dining hall has been closed during modified movement enforcement. *Id.* ¶ 54. Inmate meals have been changed to "grab and go" meals, with Virucide cleaning in between the different unit/floor meal times. *Id.* ¶ 55. In addition, sick call visits, pill lines, insulin administration and all inmate medical screening has been moved to the inmates' specific units so they can shelter in place while still receiving their medications and daily visits from medical staff. Id. ¶ 31. Soap and sanitizer have also been made available to everyone. *Id.*

All inmate companions have been moved to the units where they are assigned to work so that they are sheltering in place with their inmates. *Id.* ¶ 50. All orderlies have been assigned to work areas by unit and floor so they are working with the same inmates that they have been sheltering in place with. *Id.* ¶ 51.

As inmates are sheltering in place with their respective floor, additional physical barriers, currently under construction, are being erected in housing units in order to further decrease the number of inmates who are sheltering in place together. *Id*. ¶¶ 31, 53. Each floor or each unit will be further subdivided and the separate groups will be quarantined from each other, just as

inmates on separate floors and in different housing units are. *Id*. ¶ 53.

        b.        <u>Modification of Health Services</u>

FMC Devens Health Services has modified all medication administration in response to the COVID-19 pandemic. Inmates have been educated by health services staff on social distancing, risk factors for COVID-19, modification of schedules and changes to sick call procedures so that all inmates have continued to have access to medical staff on a daily basis. *Id*. ¶ 49. All inmates entering the hospital building are screened prior to entrance on a daily basis. *Id*. ¶ 35. The P-Unit building (originally designed as an Army hospital) has been placed in a modified lock down with no movement in between the floors, and all medication administration and meals are distributed on the floors separately. *Id.* ¶ 36.

At the onset of inmates sheltering in place on the units, inmates on dialysis and those who were currently taking immunosuppressive medication were moved to units that had cell doors so they could shelter in place with more physical barriers and a smaller number of inmates. *Id*. ¶ 37.

Dialysis inmates are screened prior to entering dialysis on a daily basis. Id. ¶¶ 27, 34. They are then given "grab and go meals" to take back to their unit so they are not exposed to other inmates on the compound during scheduled moves. Id. ¶ 27. Any inmate on Isolation or Quarantine is dialyzed in the negative pressure isolation room in dialysis. *Id*. ¶ 34. Transplant teams were notified of modified lock down procedures by FMC Devens' Transplant Coordinator. *Id*. ¶ 38. FMC Devens' telemedicine program for inmate appointments was increased for all of the transplant inmates who required visits and that could be accomplished by video or conference call. *Id.*

Telemedicine expansion was also increased with FMC Devens' local contractors for inmates who were not transplant inmates but who required visits that could be done by video or conference call. *Id.* All scheduled medical trips were reviewed for urgency and any trips that could be rescheduled without adversely affecting the health of the inmate have been cancelled and rescheduled. *Id.* ¶ 28. Inmates who must attend scheduled medical appointments are monitored for fever and symptoms for 14 days by nursing upon their return from the appointment. *Id.* ¶ 28. Escort officers have been tested and given PPE to wear during scheduled medical trips out of the institution. *Id.* ¶ 29.

Medications are administered to the inmates in the units where they are sheltering in place. *Id.* ¶ 32. Insulin is now given out on the unit, rather than requiring inmates to report to an insulin line. *Id.* "Call-outs" to Medical for medical visits have been modified to allow only inmates from the same floor and unit, who are sheltering in place together, to be in the Medical Unit at the same time. *Id.* Medical Exam rooms have been established on each unit to enable medical providers to see inmates at their shelter in place location. *Id.* ¶ 40. All Chronic Care and 14-day visits are taking place on the units or in the Quarantine area. *Id.*

Medical providers were assigned to report to FMC Devens on each day of the weekend to evaluate any inmate in the Isolation area, and to test and/or isolate any inmate with symptoms of coronavirus. *Id.* ¶ 41. Lab Techs are sent to units to draw blood, and radiology services have been coordinated so that only inmates on the same floor and unit are in the waiting room at the same time. *Id.* ¶ 42. Dental visits have also been moved to the units, and procedures are scheduled by individual inmate so that there is no exposure to other units/floors in the dental waiting room. *Id.* ¶ 43.

### c. Isolation and Quarantine Procedures

FMC Devens has established Isolation and Quarantine areas for symptomatic and asymptomatic inmates. Two separate ranges were established for Isolation (symptoms) and Quarantine (asymptomatic) inmates. Id. ¶ 22. These areas are physically separated from the other housing units and identified with signs prior to entering. Id. Staff have been educated on use of correct PPE and PPE carts set up for easy donning and doffing of PPE. *Id.* Two examination rooms in the Health Services Unit at FMC Devens have been set aside for evaluation and testing of any symptomatic inmates. *Id.* ¶ 23. Inmates with any symptoms of coronavirus, such as a cough or fever, are given a mask and escorted to these special exam rooms. *Id.* These rooms also have doors capable of closing and being locked, and all of the examination rooms are equipped with gowns, face shields, N95 masks and Virucide capable killing the coronavirus. *Id*. Inmates are tested for COVID-19, then placed in the separated Isolation Range where they are isolated from all other inmates and staff. *Id.*

### d. Testing

FMC Devens is conducting testing in accordance with CDC guidelines, which provide that "[n]ot everyone needs to be tested for COVID-19," and "decisions about testing are at the discretion of state and local health departments and/or individual clinicians." See cdc.gov/coronavirus/2019-ncov/symptoms-testing/testing.html (last visited on Apr. 22, 2020). FMC Devens has tested any symptomatic inmates.

### e. Screening Staff and Visitors

All individuals entering FMC Devens must undergo a health screening prior to entry. Enhanced screening of staff is taking place. Shaw Decl.. ¶ 24. All staff entering the institution

are screened for symptoms of COVID-19. Id. Staff exhibiting any symptoms or fever are sent home and a medical officer is assigned to contact the staff person and determine when it will be safe and appropriate for the staff member to return to FMC Devens. *Id.* All Food Service Workers are screened on a daily basis. *Id.* ¶ 33. Medical contractors have been notified that they will be screened prior to entry, and any clinics that could be cancelled and rescheduled have been changed to avoid further exposure to community physicians. *Id.* ¶ 30

### f. Cleaning

Sanitation crews at FMC Devens are working days and evenings with chemicals that kill COVID-19. *Id.* ¶ 33. Virucide has been given to all Health Services employees to clean their areas several times a day, and between any inmate visits, paying special attention to the visits from different units and or floors. *Id.* ¶ 44. Inmates have been given access to Virucide to clean their cells and common areas several times a day. *Id.* ¶ 46. Door holders have been established so that not all inmates are touching door handles as they are moving to and from their units. *Id.* ¶ 45. Staff keys and radios are disinfected with Virucide before redistribution to staff each day. *Id.* ¶ 47.

### g. Supplies

Since April 8, 2020, all inmates and staff are required to wear masks at all times in the institution to help decrease any exposure to respiratory droplets or secretions. *Id.* ¶¶ 48, 63. Inmates are subject to discipline if they fail to wear a mask. *Id.* ¶ 48. Correctional staff have been provided PPE to be used in appropriate locations throughout FMC Devens such as quarantined areas, isolation units, and screening sites. All PPE was inventoried and PPE carts were established in each of the units for staff and officers to use during visits to the units. *Id.* ¶¶

22, 39. Escort officers have been given PPE to wear during scheduled medical trips outside of FMC Devens. *Id*. ¶ 29. In addition to the institution-supplied soap available to the inmate population, they can purchase Dove anti-bacterial and Irish Spring bar soap from the commissary. *Id*. ¶ 31. Both inmates and staff have widespread access to alcohol-free sanitizers. Id. Finally, in accordance with March 15, 2020, guidance from the FDA allowing BOP to make its own sanitizer, FMC Devens pharmacy has manufactured 75% isopropyl alcohol antiseptic topical solution hand sanitizer, which is issued to staff only. *Id.*

        h.      Inmate and Staff Education

FMC Devens staff and officials have provided regular education to inmates and staff regarding the virus, the BOP's response, and the measures that they themselves should take to stay healthy, including washing their hands frequently with soap and water, avoiding touching their faces, and practicing physical distancing whenever possible. In addition to the measures previously set forth, inmates have been educated by health services staff on social distancing, risk factors for COVID-19, and modification of schedules and changes to sick call procedures so that all inmates continue to have access to medical staff on a daily basis. *Id*. ¶ 49.

The Warden continues to hold a "Town Hall" with inmates and provides weekly updates each Thursday to the inmate population through the BOP's electronic messaging system. *Id.* ¶ 64. Health Services staff developed a tool to identify high-risk inmates per the CDC website definition (https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html) and are screening these inmates for referral to Expanded Home Confinement in conjunction with the Unit Team. *Id*. ¶ 57. This analysis includes education and collaboration between the inmate and his medical provider on whether his risks for COVID-19 are greater at home or at the institution. *Id*.

5. The Motion Should Be Denied.

    a. The Defendant Has Not Exhausted His Administrative Remedies

A federal district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). 18 U.S.C. § 3582(c) provides three narrow exceptions to this rule, only the first of which is relevant here. *See* 18 U.S.C. § 3582(c)(1)–(2); *see also United States v. Sumner*, 210 F. Supp. 3d 21, 22–23 (D.D.C. 2016) (denying defendant's motion to reduce sentence where he did not meet any of the three exceptions provided in § 3582(c)).

Title 18, United States Code, Section 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part that the court "may not modify a term of imprisonment once it has been imposed except" upon a defendant's motion "*after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," where such a reduction also meets other specified requirements. 18 U.S.C. § 3582(1)(A) (emphasis added).

Here, the defendant has conceded he has not exhausted his administrative remedies. Motion, at 3 (claiming that it will be futile for him to do so).

As the Third Circuit recently pointed out in assessing a coronavirus-related compassionate release request, in most cases the statute's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release" before BOP has thirty days to consider the defendant's request. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922 at *2 (3d Cir. Apr. 2, 2020). For example in this District, Judge Talwani denied an early and generic COVID-19 compassionate release

motion, holding that the defendant failed to demonstrate why the court should grant such extraordinary relief in his specific case absent administrative exhaustion. *See United States v. Sloane*, No. 1:19-cr-10117-IT, Doc. 647, (D. Mass. Mar. 19, 2020) (stating "[a]t this juncture and on this record . . . the court finds that it does not have authority to grant the requested relief.").

A number of other courts have denied applications for sentence modification under § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19, on the ground that the defendants failed to exhaust administrative remedies. *See United States v. Louis,* 19-CR-10417-RGS, Dkt. 77; *see also, e.g., United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Hernandez*, No. 19 Cr. 834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020). For these reasons, the Motion should be denied.

      b.     <u>The Defendant Has Not Presented Extraordinary and Compelling Reasons Warranting a Sentence Reduction</u>

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[7]

---

[7] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t)

Here the defendant is 52 years old, so he does not fall into the second category, which means the Court must determine whether there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). Even if the defendant had exhausted his administrative remedies, which he has not, the defendant has not provided any extraordinary or compelling reason to be afforded the exceptional relief of early release from incarceration.

The defendant's Pre-Sentence Investigation Report dated September 6, 2018 (the "PSR") did not identify any substantial medical or health problems, and does not mention diabetes at all. The PSR stated the following with respect to the defendant's physical health:

> The defendant is a 51-year-old Caucasian male who stands 6'4" tall, weighs 275 pounds, has brown eyes, graying brown hair, and an 8" scar on the back of his left leg. The scar is the result of a ruptured Achilles that required surgery; the defendant has no lasting effects from the injury. In 2010, the defendant was diagnosed with sleep apnea and he has used a continuous positive airway pressure (CPAP) machine since 2017. The defendant indicates he reported to an urgent care clinic for flu-like symptoms in 2017 and in an EKG test performed during that visit physicians discovered an atrial fibrillation (irregular and rapid heart rate). He was brought to the Berkshire Medical Center and remained hospitalized for two days; he was discharged once his heart rate returned to normal. The defendant currently takes low dose aspirin for his heart and is in the process of following up with a cardiologist.

*Id.*, ¶ 58.

Without minimizing the severity of COVID-19 and the health risks associated, the defendant has not identified any substantiated health factors that make him particularly vulnerable to serious illness or death from the coronavirus. Rather, he merely asserts that he is particularly vulnerable

---

states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

based upon his claimed (and unsubstantiated) diabetes, sleep apnea, high blood pressure, and high cholesterol. Motion, at 1. Such general concerns do to constitute "extraordinary and compelling circumstances" as required under 18 U.S.C. § 3582(c)(1)(A). If the Court were to adopt the defendant's logic, most of the federal prison population would warrant release.

In a similar case, this Court denied a similar motion. See *United States v. Samuel*, Docket No. 18-CR-30045-MGM (D.87) (noting that "Defendant testified that Devens has taken various precautions, including distributing masks and disinfectant and significantly reducing the number of inmates eating in the dining area at a time, among other actions" and that the evidence submitted in Kellem "appears reliable and has been accepted as such by two separate federal judges").

6. Conclusion

For the foregoing reasons, the Government respectfully asks that the Court deny the Motion.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

**Certificate of Service**

I hereby certify that this document was filed by ECF and will be sent by e-mail to the registered participants as identified on the Notice of Electronic Filing.

By: */s/ Steven H. Breslow*
STEVEN H. BRESLOW

Assistant U.S. Attorney

Dated:   May 14, 2020